UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>              Plaintiff,<br>     v.<br><br>BLUE MOUNTAIN FARMS, BLUE MOUNTAIN FARMS PACKING, RYAN BROCK, SHIRLEY LOTT, and JOHN AND JANE DOES I through XX,<br>              Defendants. | NO:  CV-13-5081-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Before the Court is the Plaintiff's motion for a temporary restraining order ("TRO"), which the Court is treating as a motion for a preliminary injunction, ECF No. 2.  The Court has reviewed the motion and supporting declaration, the response and supporting declarations, the supplemental memorandum and supporting declarations, the supplemental response, the reply, and the declarations filed concurrently with the reply.  Telephonic argument on the TRO issue was held

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION ~ 1

on July 26, 2013. Telephonic argument on the preliminary injunction issue was held on August 7, 2013. The Court is fully informed.

## BACKGROUND

Plaintiff is the Secretary of Labor ("Secretary") of the United States Department of Labor ("Department"). Defendants are two business entities and the two natural persons who own those business entities. Defendants are engaged in the practice of blueberry farming. On Tuesday, July 23, 2013, investigators from the Wage and Hour Division of the Department traveled to Defendants' blueberry packing shed in Walla Walla County, Washington. ECF Nos. 5 at 2, 13 at 6. The parties disagree over the nature and extent of cooperation between the parties on July 23. *Compare* ECF No. 5 at 3-4 *with* ECF No. 13 at 6-8. However, it is uncontested that on July 24, 2013, Defendants barred access to the investigators and threatened to call local law enforcement if the investigators did not leave the property. ECF No. 5 at 4.

On July 25, 2013, the Secretary filed the present action and contemporaneously moved the Court for a TRO, seeking to enjoin Defendants from barring entry to their fields and packing shed. ECF Nos. 1, 2. Defendants, without being formally served, opposed the TRO. A telephonic hearing was held on July 26, 2013. ECF No. 8. At the hearing, the Court denied the motion for TRO on the grounds that the requirements of Federal Rule of Civil Procedure 65

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 2

had not been met. ECF No. 9. However, in the interest of expedience, the Court converted the motion to a motion for preliminary injunction and allowed supplemental filings on an expedited schedule. The converted motion is now ripe before this Court.

**DISCUSSION**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[1] *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary

---

[1] The Secretary has argued that he need only establish "reasonable cause" to believe that a statutory violation has been committed in order to be entitled to an injunction. As this Court ultimately finds that an injunction is warranted under the standard enunciated in *Winter*, the Court declines to determine whether the lesser "reasonable cause" standard applies.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 3

remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982)).

**Likelihood of Success on the Merits**

The Secretary's case against the Defendants appears very straightforward. By statute, the Secretary is empowered to "investigate, and in connection therewith, enter and inspect such places (including housing and vehicles) and such records (and make transcriptions thereof), question such persons and gather such information to determine compliance" with the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"). 29 U.S.C. § 1862(a). Individuals violate MSPA when they "unlawfully resist, oppose, impede, intimidate, or interfere with any official of the Department of Labor assigned to perform an investigation, inspection, or law enforcement function pursuant to [MSPA] during the performance of such duties." 29 U.S.C. § 1862(c). Violations of the MSPA can give rise to criminal sanctions, 29 U.S.C. § 1851, or injunctive relief, 29 U.S.C. § 1852(a). The Secretary argues that by barring investigators from Defendants' blueberry fields and threatening to call local law enforcement, Defendants have violated the act by unlawfully impeding the Department's investigation.

Defendants oppose the Secretary's argument in two ways: (1) by asserting that they never unlawfully impeded the Secretary's investigation; and (2) by arguing that the right to access contained in § 1862(a) is unconstitutional. These

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION ~ 4

1 arguments were the same arguments raised in *McLaughlin v. Elsberry, Inc.*, 868
2 F.2d 1525 (11th Cir. 1988).  In that case, the Eleventh Circuit faced a similar
3 situation in which a farmer barred the Department of Labor from accessing his
4 workers without a search warrant. *Id.* at 1527.  The Secretary filed an action
5 seeking injunctive relief. *Id.*  The defendant opposed the injunction on two
6 grounds: (1) "because its resistance to the [Department]'s entry onto its fields was
7 not forcible, it did not amount to unlawful resistance" under 29 U.S.C. § 1862(c),
8 and (2) because entry onto the defendant's fields without a warrant would violate
9 the Fourth Amendment. *Id.* at 1527, 1529.  The *Elsberry* court declined to address
10 the defendant's first argument on the grounds that, even if taken as true, it did not
11 preclude the Department from seeking relief in support of its power to investigate
12 under 29 U.S.C. § 1862(a). *Id.* at 1529.  The *Elsberry* court then proceeded to
13 address the Fourth Amendment issue.

14 As the court in *Elsberry* noted, the Secretary may seek to vindicate the
15 Department's investigatory power even without a finding of a violation of the
16 MSPA. *Id.*  The relief sought by the Secretary in this case is the enforcement of its
17 statutory right to enter Defendants' fields and packing shed under 29 U.S.C.
18 § 1862(a).  The right of entry is not conditioned on a finding of a violation. *See*
19 § 1862(a).  Accordingly, as with the court in *Ellsberry*, this Court need not address
20

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION ~ 5

the issue of violation but will address whether the Fourth Amendment restricts the right to enter and investigate under § 1862(a).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV.

The Fourth Amendment requires that searches be reasonable and searches made without a warrant are presumptively unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). One of those exceptions is the so-called "open field" exception. By its own text, the Fourth Amendment protects persons, houses, papers, and effects from unreasonable searches and seizures. The Supreme Court has consistently held that an open field falls outside the protection of the Fourth Amendment. *United States v. Dunn*, 480 U.S. 294, 303-04 (1987). In addition, the Supreme Court has applied the open field exception to farms. *E.g.*, *Oliver v. United States*, 466 U.S. 170 (1984).

Defendants argue that this case is distinguishable from cases in which the open field exception has been applied because open field cases traditionally involve only limited incursions of short duration to investigate the growing of drugs or distilling of spirits while the present case involves a longer and broader

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 6

1  incursion.  ECF No. 18 at 13.  However, the logic of the open field exception is

2  that entry into an open field does not constitute a search and therefore does not

3  come within the ambit of the Fourth Amendment.  *See Oliver*, 466 U.S. at 178-180.

4  The Court is aware of no authority, and none has been cited by Defendants,

5  converting an incursion into an open field into a search based on the duration of

6  that incursion.  *But cf. United States v. Jones*, 132 S. Ct. 945, 964 (2012) (Alijo, J.,

7  concurring).  Accordingly, the Court rejects Defendants' attempts to distinguish

8  the facts of this case from those cases in which the open field exception has been

9  applied.

10       Defendants next argue that even if the Government may enter open fields

11  without a warrant, public policy supports imposing limitations on the

12  Government's access when in the fields.  However, because entry into an open

13  field has not been recognized as a search or seizure, the Fourth Amendment is

14  simply not invoked by Government incursions into open fields.   Accordingly, the

15  Fourth Amendment cannot serve as the source of any limit to the discretion of

16  authorities upon entering an open field.  As a result, the Fourth Amendment

17  imposes no limitations on the Secretary's statutory authority to investigate wage

18  and hour claims in an open field.

19       In the Secretary's original motion, the Secretary sought both entry to

20  Defendants' fields and "other places where [Defendants] opt to employ workers

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION ~ 7

covered by the [MSPA]."  ECF No. 2 at 6.  While an open field is outside the scope of the Fourth Amendment, structures, including commercial structures, fall within the Fourth Amendment's ambit.  *United States v. Van Damme*, 48 F.3d 461, 465 (9th Cir. 1995) (citing *Dow Chem. Co. v. United States*, 476 U.S. 227, 236 (1986)).  Accordingly, while the Fourth Amendment provides no barrier to investigating in Defendants' fields, it does restrict the Secretary's authority in Defendants' buildings.

covered by the [MSPA]."  ECF No. 2 at 6.  While an open field is outside the scope of the Fourth Amendment, structures, including commercial structures, fall within the Fourth Amendment's ambit.  *United States v. Van Damme*, 48 F.3d 461, 465 (9th Cir. 1995) (citing *Dow Chem. Co. v. United States*, 476 U.S. 227, 236 (1986)).  Accordingly, while the Fourth Amendment provides no barrier to investigating in Defendants' fields, it does restrict the Secretary's authority in Defendants' buildings.

The Secretary asserts that investigators may enter open structures, including Defendants' packing shed, because Defendants operate a heavily regulated business and that regulation precludes Defendants from possessing a reasonable expectation of privacy in their commercial structures.  The Supreme Court has recognized that heavily regulated commercial industries enjoy a lower expectation of privacy than private citizens enjoy in their homes.  *New York v. Burger*, 482 U.S. 691, 700 (1987).  As a result of this diminished expectation of privacy, "the warrant and probable-cause requirements . . . have lessened application in this context," and "warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment."  *Id.* at 702.

However, simply regulating an industry does not completely deprive a business of its Fourth Amendment rights.  Warrantless inspections of regulated industries are "reasonable only so long as three criteria are met."  *Id.*  "First, there

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION ~ 8

must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Id.* (citing *Donovan v. Dewey*, 452 U.S. 594, 602 (1981)). "Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.'" *Id.* (alteration in original) (quoting *Donovan*, 452 U.S. at 600). Third, "'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'" *Id.* at 703 (alteration in original) (quoting *Donovan*, 452 U.S. at 600).

With regard to this third requirement, the Supreme Court has further explained that "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.* (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323 (1978)). In order to perform the functions of a warrant, "the statute must be 'sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.'" *Id.* (quoting *Donovan*, 452 U.S. at 600).

Neither the MSPA nor related regulations provide the type of limitations needed to satisfy the third requirement for a warrantless search of a pervasively

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 9

regulated industry. The statute authorizing inspections provides a broad power to inspect seemingly anything related to the MSPA. *See* 29 U.S.C. § 1862(a). The relevant regulation parrots the language of the statute without adding any restrictions. *See* 29 C.F.R. § 500.7(a). This statutory and regulatory scheme stands in sharp contrast to the type of regulatory schemes the Court has upheld. *See Burger*, 482 U.S. at 711-712 (upholding a search made pursuant to a statutory scheme that established "regular" inspections, during usual business hours, limited to records and certain pieces of equipment that were on site); *Donovan*, 452 U.S. at 603-05 (upholding a search made pursuant to a statutory scheme that required inspection of all mines, defined the frequency of inspections, and established specific criteria to be reviewed in the inspection).

      The Secretary argues that the absence of a statutory scheme regulating the scope and frequency of searches is not fatal in this case because the nature of the industry and the Secretary's own publications inform the regulated parties that they are subject to inspection and what the scope of that inspection will be. However, the Secretary has provided no authority for the proposition that restrictions that are not contained in a statute or published regulation can meet the requirements of the warrant exception. The Court declines to extend the reasoning of *Burger* and *Donovan* by holding that *de facto* constraints on inspector discretion are equivalent to *de jure* constraints. The simple fact is that in this case, no statute limits the

frequency, timing, or scope of the Secretary's inspection authority. As a result, the Court finds that searches made pursuant to the Secretary's authority that fall within the ambit of the Fourth Amendment, i.e., searches of structures on commercial farms, are not subject to the warrant exception for pervasively regulated businesses.

In summary, the Secretary is likely to succeed on the merits as to the issue of whether the Secretary has authority to enter Defendants' open fields without a warrant. However, the Secretary is unlikely to succeed on the merits as to the issue of whether the Secretary has authority to enter Defendants' buildings, including the packing shed, without a warrant. The Court will tailor its relief accordingly.

**Irreparable Harm**

The Court is persuaded that interviews of workers while they are in the field are necessary to ensure that payment records kept by farmers accurately reflect the work that is being done on their farms. Even accepting Defendants' argument made during the July 26, 2013, hearing that the harvest will persist until October of this year, the Court is convinced that irreparable harm is likely to occur should a preliminary injunction not issue because, given the pace of civil litigation, an action for injunctive relief is unlikely to be completed in three months. Without relief now, the Secretary will be unable to interview workers in the field without restraint by Defendants.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 11

While the parties agree that much interviewing already has occurred, both parties also agreed that the investigation is ongoing. Furthermore, the interviews that have occurred may have been tainted by the presence of supervisors and video cameras. Accordingly, the need for interviews persists and without pre-judgment relief, those interviews would be subject to the restrictions imposed by Defendants. Therefore, the Secretary has made a showing that irreparable harm is likely.

**Balance of the Equities**

Defendants' primary concern is the unimpeded accomplishment of the blueberry harvest. The Secretary's concern is to ensure that covered workers employed in the fields be compensated in the manner required by law. The Court concludes that the balance of the equities tips in the favor of the Secretary because unimpeded access to workers in the field is the only way to ensure that records accurately reflect the work being performed. Such access should be accomplished with only minimal impact on the efficiency of the harvest. Additionally, should the investigation by the Secretary ultimately be determined to violate the Fourth Amendment or state tort law, Defendants' interest is ultimately economic and compensable, while the Secretary's interest is not. Accordingly, the Court finds that the balance of the equities favors the Secretary.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 12

**Public Interest**

Congress has expressed a strong public interest in protecting migrant agricultural workers by enacting the MSPA. The Court has found in-field interviews to be essential to effective regulatory enforcement of migrant worker wage rights. Accordingly, the public interest favors granting the Secretary access to the Defendants' workers.

**Nature of Relief**

The Secretary has requested that this Court enjoin Defendants from restricting or otherwise interfering with Department investigators access to migrant workers employed by Defendant. To the degree that such access takes place in the open fields of Defendants, the Court grants such relief. To the degree that access would require entering a structure or its curtilage, such relief is denied. As a note of clarification, the Court finds that videotaping and the presence of supervisors during interviews would unreasonably interfere with the Secretary's ability to interview migrant workers. *See Ca. Acrylic Indus., Inc. v. NLRB*, 150 F.3d 1095 (9th Cir. 1998). As such, the Court restrains Defendants from recording interviews with workers or sending supervisors for the purpose of observing interviews. Investigators shall be allowed sufficient distance to privately interview migrant workers. The Secretary shall take every effort to ensure that the investigation has

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION ~ 13

as minimal an impact on the efficient harvest of Defendants' blueberries as possible.

The Secretary also has requested mandatory injunctive relief in the form of requiring Defendants to publish and distribute a document to be furnished by the Secretary expressing in English and Spanish the rights of covered workers. Mandatory injunctions are particularly disfavored. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complaint of is capable of compensation in damages.'" *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)). The Court finds that the evidence presented by the Secretary does not evidence the type of "extreme or very serious damage" necessary for this court to mandate affirmative action on behalf of Defendants. That said, the Court will allow the Secretary to issue its own notices to workers or publish notices in local media without interference by Defendants.

This injunction shall be effective until September 30, 2013. The Secretary may move to extend the injunction if the investigation is not completed prior to September 30, 2013.

/ / /

/ / /

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION ~ 14

Accordingly, **IT IS HEREBY ORDERD:**

1. Plaintiff's motion for preliminary injunction, **ECF No. 2**, is **GRANTED IN PART AND DENIED IN PART** as established above.

**IT IS SO ORDERED**.

The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 9th day of August 2013.

                           *s/ Rosanna Malouf Peterson*
                           ROSANNA MALOUF PETERSON
                         Chief United States District Court Judge