1

2

3

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>            Plaintiff,<br>    v.<br><br>BLUE MOUNTAIN FARMS LLC, BLUE MOUNTAIN PACKING LLC, RYAN BROCK, SHIRLEY LOTT, GREAT COLUMBIA BERRY FARM LLC, APPLEGATE ORCHARDS INC. and BRANDON LOTT,<br><br>            Defendants. | NO: 2:13-CV-5081-RMP<br><br>ORDER GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT |

        BEFORE THE COURT is Plaintiff's Motion for Summary Judgment

Regarding the Secretary's Paragraph VIII and XIV(a)-(e) Claims for Relief Under

the Fair Labor Standards Act and the Migrant and Seasonal Agricultural Workers

Protection Act, **ECF No. 96**.  The Court has reviewed the filings, the response

memorandum, ECF No. 115, the reply memorandum, ECF No. 128, and is fully informed.

## BACKGROUND

Defendants' business is the agricultural production of blueberries. ECF No. 96-1 at 2. As part of blueberry production, Defendants employ workers to pick blueberries in their fields. *Id.* at 3. These workers are employed seasonally from June to October of each year. ECF No. 97-1 at 2. Some workers are required to be away from their permanent residence overnight or longer related to their employment. ECF No. 96-1 at 3.

Workers are paid a piece rate for each pound of blueberries they pick during a given workday. *Id.* at 4. The pounds of blueberries harvested by each worker are recorded on a punch ticket that bears the worker's name. *Id.* Only one worker is named on any given ticket. *Id.* Workers bring their blueberries to a weigh station where Defendants' employees record the amount on the worker's ticket. *Id.* Tickets are collected at the end of each workday and used to compute the number of pounds of blueberries picked by the worker named on the ticket. *Id.* at 5. The number of pounds picked is used to prepare pay checks for each named worker. *Id.*

Some workers who picked Defendants' blueberries were not recruited through a formal hiring process. *Id.* at 7. These "shadow" workers (interchangeably referred to by the parties as "ghost" workers) did not possess their

own self-identifying ticket but would instead share, or pick blueberries which were counted on, another worker's ticket. *Id.*; *see also* ECF No. 99 at 5 ("During the 2011 blueberry picking season, I shared my ticket with another picker."); ECF No. 100 at 2–3 ("During the 2009 to 2012 picking seasons, I worked on my mother's ticket. My brother also worked on my mother's ticket at the same time, as did my father."); ECF No. 102 at 5 ("During the 2013 blueberry picking season, once per week I shared my punch ticket with another picker."); ECF No. 103 at 5 ("From the 2008 season on, the blueberries I picked were recorded on the punch ticket under my name. However, my two sons also worked under my punch ticket."); ECF No. 104 at 5 ("During the time I worked for Blue Mountain Farms LLC, I shared my punch ticket with my son and daughter."). When both a named and "shadow" worker share the named worker's ticket, the ticket reflects the labor (measured in pounds of blueberries picked) of both individuals. *See, e.g.*, ECF No. 100 at 3.

Defendants maintain that they have a policy prohibiting ticket sharing, *see* ECF No. 119 at 4 ("The rule at Blue Mountain Farms is that every worker must have his or her own pick ticket."), that is enforced when multiple workers are caught picking blueberries on a single ticket. *See* ECF No. 97-1 at 4 ("If I count 110 workers and get 100 tickets at the end of the day, we just remind the foreman that everyone has to be on their own ticket."); ECF No. 117 at 2 ("Supervisors at

1  Blue Mountain Farms routinely remind employees of the rule . . . as well as the

2  fact that employees can be terminated if they do share tickets.").  However,

3  Defendants admit that, despite their best efforts, multiple workers do occasionally

4  pick on the same ticket.  *See* ECF No. 97-1 at 4 ("Sometimes people do pick on the

5  same ticket"); ECF No. 115 at 9 ("Despite defendants' rule against sharing tickets,

6  defendants acknowledge that it may occasionally happen.").  Defendants also

7  dispute that ticket sharing, where it exists, is as prevalent as alleged by the

8  Secretary.  ECF No. 117 at 2 ("While we occasionally discover that two workers

9  are sharing a pick ticket, this is not a prevalent or persistent problem at Blue

10 Mountain Farms.").

11      Ticket sharing, however extensive, necessarily results in inaccurate

12 recordkeeping.  There would be no record at all concerning the unnamed "shadow"

13 worker and the records of the worker named on the ticket would be inflated by the

14 "shadow" worker's labor.  ECF No. 115 at 9 ("Defendants further acknowledge

15 that if it were to happen, defendants would not have records for those

16 ghostworkers, and that those ghostworkers may not have seen the disclosures

17 provided to employees at the time of hire and time of payment."); *see also* ECF

18 No. 99 at 5 ("When I shared my ticket, Blue Mountain Farms LLC did not collect

19 information . . . about the other worker on my ticket."); ECF No. 100 at 3 ("When I

20 shared punch tickets, all of the berries I picked were weighed along with the

berries of the other workers on my mother's ticket."); ECF No. 102 at 5 ("When I shared my tickets, all of the blueberries I picked were weighed together with the blueberries of the other worker on my ticket"); ECF No. 103 at 5–6 ("[T]he blueberries that my sons picked were mixed with the blueberries I picked and they were weighed together with a representative of Blue Mountain Farms LLC.  I was paid based on the total amount of blueberries picked, including the blueberries picked by my sons."); ECF No. 104 at 5–6 ("When I worked on a shared ticket, I would divide the money paid by the company with the workers who shared the ticket.  I divided the pay depending on the number of blueberry boxes picked.  The money distribution was not exact. Blue Mountain Farms LLC did not issue us separate checks to each one of the members sharing the ticket.").  Defendants would also be unable to disclose employment information to any "shadow" workers during recruitment.  *See* ECF No. 100-1 at 2 ("In those seasons, Blue Mountain Farms had no contact with me regarding the work I did for them.  I didn't get any information about the terms and conditions of my employment with Blue Mountain Farms."); ECF No. 101-1 at 2 (same); ECF No. 106-1 at 5 (same).

The Secretary filed this lawsuit following an investigation into Defendants' employment practices.  The First Amended Complaint alleges violations of the Fair Labor Standards Act ("FLSA") and the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA").  *See* ECF No. 54.  The Secretary filed this

motion for partial summary judgment on Paragraphs VIII and XIV(a)-(e) of the First Amended Complaint on September 9, 2015.  ECF No. 96.  Paragraph VIII alleges violations of FLSA recordkeeping requirements.  ECF No. 54 at 9–10. Paragraphs XIV(a)-(e) allege violations of various MSPA recordkeeping and disclosure provisions.  *Id.* at 13.  Further, the Secretary requests an injunction enjoining Defendants from committing future violations of both the FLSA and MSPA.  ECF No. 96 at 3.  Finally, in contemplation of the next stage of litigation, the Secretary asks for a finding that the Department is entitled to prove any wages owed as a matter of just and reasonable inference under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). ECF No. 96 at 21.

Defendants filed a response on September 30, 2015.  ECF No. 115.  The Secretary filed a reply on October 14, 2015.  ECF No. 128.  The Court heard oral argument on October 28, 2015.  *See* ECF No. 141.

## DISCUSSION

### I.    Whether Summary Judgment is Appropriate on the Secretary's FLSA and MSPA Recordkeeping and Disclosure Allegations

### A. Summary Judgment Standard

Summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A party may move for partial summary judgment by identifying the specific claim or defense on which summary

judgment is sought. *Id.*  If the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set out specific facts showing that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  A genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e).  Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A).  The court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Dzung Chu v. Oracle*

*Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**B. The FLSA and MSPA Recordkeeping and Disclosure Provisions**

The FLSA imposes on qualifying employers various recordkeeping

requirements. 29 U.S.C. § 211(c); *Mt. Clemens*, 328 U.S. at 687 ("Due regard must

be given to the fact that it is the employer who has the duty under § [211(c)] of the

[FLSA] to keep proper records of wages, hours and other conditions and practices

of employment."). Section 211(c) requires:

> Every employer subject to any provision of this chapter or of any order
> issued under this chapter shall make, keep, and preserve such records
> of the persons employed by him and of the wages, hours, and other
> conditions and practices of employment maintained by him, and shall
> preserve such records for such periods of time, and shall make such
> reports therefrom to the Administrator as he shall prescribe by
> regulation or order as necessary or appropriate for the enforcement of
> the provisions of this chapter.

29 U.S.C. § 211(c). Section 215(a)(5) makes it unlawful "to violate any of the

provisions of section 211(c)." 29 U.S.C. § 215(a)(5).

The MSPA imposes similar recordkeeping requirements on qualifying

employers of migrant and/or seasonal agricultural workers. As to migrant

agricultural workers, MSPA mandates that

> [e]ach farm labor contractor, agricultural employer, and agricultural
> association which employs any migrant agricultural worker shall
> (1) with respect to each such worker, make, keep, and preserve records
> for three years of the following information: (A) the basis on which
> wages are paid; (B) the number of piecework units earned, if paid on a

ORDER GRANTING IN PART MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 8

piecework basis; (C) the number of hours worked; (D) the total pay period earnings; (E) the specific sums withheld and the purpose of each sum withheld; and (F) the net pay.

29 U.S.C. § 1821(d)(1); *see also* 29 U.S.C. § 1831(c)(1) (imposing identical wage-related recordkeeping requirements on employers of seasonal agricultural workers).

MSPA further charges that the employer must provide to each migrant agricultural worker "for each pay period, an itemized written statement of the information required by § 1821(d)(1)." 29 U.S.C. § 1821(d)(2); *see also* 29 U.S.C. § 1831(c)(2) (imposing identical disclosure of wage-related records requirements on employers of seasonal agricultural workers). MSPA imposes additional wage-related disclosure requirements on employers who furnish migrant agricultural workers to other employers, requiring the employer to provide copies of all records which the employer must produce and retain under § 1821(d)(1). 29 U.S.C. § 1821(e); *see also* 29 U.S.C. § 1831(d) (imposing identical requirement on employers of seasonal agricultural workers). Finally, employers of migrant agricultural workers are required to

ascertain and disclose in writing to each such worker who is recruited for employment the following information at the time of the worker's recruitment: (1) the place of employment; (2) the wage rates to be paid; (3) the crops and kinds of activities on which the worker may be employed; (4) the period of employment; (5) the transportation, housing, and any other employee benefit to be provided, if any, and any costs to be charged for each of them; [and other provisions relating to

strikes or concerted work stoppage, sales commissions; and worker's compensation insurance].

29 U.S.C. § 1821(a); *see also* 29 U.S.C. § 1831(a) (same disclosure requirements concerning seasonal agricultural workers except, while the employer must still ascertain the information, the information must only be disclosed in writing upon the worker's request when an offer of employment is made).  The information to be disclosed to migrant agricultural workers in § 1821(a) must be provided in written form. 29 U.S.C. § 1821(g); *see also* 29 U.S.C. § 1831(f) (same requirement for employers of seasonal agricultural workers).

**C. Whether a Genuine Issue of Material Fact Exists Concerning the Secretary's FLSA and MSPA Recordkeeping and Disclosure Allegations**

Defendants dispute neither that they are employers subject to the FLSA and MSPA nor that both the named and "shadow" workers qualify for protection under the statutes. *See generally* ECF No. 115.  Instead, Defendants argue that there are unresolved issues that preclude summary judgment concerning the prevalence of ticket sharing and whether Defendants had an accepted practice of permitting ticket sharing by their workers. *See id.* at 2.

While Defendants' arguments raise concerns that are relevant to the issue of wages owed, they do not raise a genuine issue of material fact concerning whether the FLSA and MSPA recordkeeping and disclosure provisions were actually violated.  Each statutory provision on which the Secretary moves for summary

judgment contains a mandate to qualifying employers requiring them to undertake the listed command. *See, e.g.*, 29 U.S.C. § 211(c) ("Every employer . . . ***shall*** make, keep, and preserve . . . .") (emphasis added); 29 U.S.C. § 1821(d)(1) ("Each . . . agricultural employer . . . which employs any migrant agricultural worker ***shall*** . . . .") (emphasis added). In fact, every provision at issue employs the verb "shall," thereby issuing employers a directive to record or disclose information as instructed. *See Shall*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "shall" as "[h]as a duty to; more broadly, is required to"). As such, the FLSA and MSPA recordkeeping and disclosure provisions are mandatory and must be fully complied with by employers.

Defendants are correct that genuine issues of material fact remain concerning both any policy regarding and the prevalence of "shadow" workers. However, to defeat summary judgment on Paragraphs VIII and XIV(a)-(e) Defendants must demonstrate that a genuine issue of material fact exists as to their full compliance with the FLSA and MSPA recordkeeping and disclosure provisions. Defendants have failed to do so. Defendants concede that ticket sharing "may occasionally happen." ECF No. 115 at 9. Defendant Brandon Lott admitted that "[s]ometimes people do pick on the same ticket." ECF No. 97-1 at 4. Defendant Shirley Lott admitted that workers have been caught and terminated for picking blueberries on the same ticket. ECF No. 116-1 at 2–3. Defendants have

failed to rebut the declarations from various workers who report sharing tickets. ECF No. 115 at 9 n.2.

Based on the evidence before the Court, the Court finds that ticket sharing occurs amongst Defendants' workers.  It is immaterial to the instant motion both how often ticket sharing occurs as well as any efforts taken by Defendants to discourage the practice.  When workers share tickets, Defendants are unable to produce accurate records for either the named or "shadow" workers under the FLSA and MSPA.  Further, as a "shadow" worker has not been through a formal hiring process and subsequently named on his or her own ticket, Defendants will not have given that worker the required MSPA disclosures.  Therefore, summary judgment is appropriate on the Secretary's claims in Paragraphs VIII and XIV(a)-(d).

However, there is insufficient evidence to support a grant of summary judgment on the claim in Paragraph XIV(e). Paragraph XIV(e) alleges that Defendants violated 29 U.S.C. §§ 1821(e) and 1831(d) by "failing to provide to migrant and seasonal agricultural workers, copies of payroll records required to be made, kept and preserved under §§ [1821(d) and 1831(c)] of the [MSPA]."  ECF No. 54 at 14. Section 1821(e) provides that

> Each farm labor contractor shall provide to any other farm labor contractor, and to any agricultural employer and agricultural association to which such farm labor contractor has furnished migrant agricultural workers, copies of all records with respect to each such

worker which such farm labor contractor is required to retain by subsection (d)(1) of this section. The recipient of such records shall keep them for a period of three years from the end of the period of employment.

29 U.S.C. § 1821(e); *see also* 29 U.S.C. § 1831(d) (same requirement for employers of seasonal agricultural workers).  Sections 1821(e) and 1831(d) concern an employer's record-producing obligation where workers are furnished to other employers. *See Oritz v. Paramo*, 06-3062 RBK/AMD, 2009 WL 4575618, at *6 (D.N.J. Dec. 1, 2009) (finding violation of § 1821(e) where employer had failed to provide records to another employer).  Here, the Secretary alleges that Defendants violated §§ 1821(e) and 1831(d) by failing to provide the required records to the migrant and seasonal agricultural workers themselves. ECF No. 54 at 14. No allegations have been made that Defendants "loaned" employees to another employer. Sections 1821(e) and 1831(d) are not applicable to the present dispute as it has been presented to the Court.  Therefore, summary judgment for the Secretary on Paragraph XIV(e) is denied.

Defendants' counterarguments are unavailing. A policy prohibiting ticket sharing does not create a genuine issue of material fact about whether "shadow" workers exist amongst Defendants' workforce. *See Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966) (noting that the "fact that the defendants gave instructions not to work overtime is not a defense to a claim for overtime actually worked").  In fact, the very existence of a policy and examples of its enforcement tend to prove

that ticket sharing occurs.  Under the FLSA and MSPA, it is ultimately

Defendants' responsibility to keep accurate records and make the required

disclosures to all workers.  A policy designed to promote compliance with

statutory mandates does not by its existence negate evidence that the workers

failed to comply with the policy.

At this time, there are genuine issues of material fact regarding the

prevalence of "shadow" workers amongst Defendants' workforce.  However, while

prevalence will impact a determination of wages owed, questions as to the number

of "shadow" workers does not raise a genuine issue of material fact concerning

whether those workers exist at all.  As the existence of even a single "shadow"

worker would result in inaccurate records and insufficient disclosures, prevalence

is irrelevant to the instant motion for summary judgment.

During oral argument, Defendants drew a comparison between the alleged

recordkeeping and disclosure violations and established case law concerning

unpaid overtime under the FLSA. An employer's duties concerning overtime are,

however, distinguishable from its recordkeeping and disclosure obligations.  A

critical factor in the overtime decisions was that the defendant employers did not

have knowledge that the employees were working overtime. *See Forrester v.*

*Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("However,

where an employer has no knowledge that an employee is engaging in overtime

work . . . the employer's failure to pay for overtime hours is not a violation."); *see also White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA."). Recordkeeping violations are substantively different from those in the overtime context. *See Mt. Clemens*, 328 U.S. at 687 ("When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate . . . a more difficult problem arises."). As Defendants had knowledge that ticket sharing occurred, the Court is unpersuaded by Defendants' analogy. The "shadow" workers did not "thwart" Defendants' ability to comply with the FLSA and MSPA. Defendants' policy and enforcement were simply ineffectual, resulting in Defendants' failure to discharge its statutory obligations.

Defendants also cite *Solis v. Washington*, 08-5362 RJB, 2009 WL 2855441 (W.D. Wash. Aug. 31, 2009), in support. In *Solis*, the court found a genuine issue of material fact concerning the procedure used to record overtime hours. *Id.* at *3. As Defendants have no records for any "shadow" workers, *Solis* is distinguishable.

Again, Defendants are correct that there are genuine issues of material fact concerning whether Defendants had an "accepted practice" of allowing ticket

sharing and whether Defendants failed to make the required disclosures to "a significant portion" of its workforce. *See* ECF No. 115 at 7. However, these disputes are relevant to wages owed, not a determination that the provisions in question were violated. Where ticket sharing occurred, Defendants were unable to comply with the mandatory recordkeeping and disclosure requirements of the FLSA and MSPA. Therefore, summary judgment is appropriate on Paragraphs VIII and XIV(a)-(d). Summary judgment is denied on Paragraph XIV(e).

## II. Whether Injunctive Relief is Appropriate to Enjoin Future Violations of the FLSA and MSPA

The Secretary argues that an injunction is necessary to enjoin further violations of the FLSA and MSPA. ECF No. 128 at 5. The Secretary contends that Defendants do not take their responsibilities as an employer seriously, and that an injunction would force Defendants to abandon the status quo and make the necessary changes to comply with the law. *Id.* at 6–7. Defendants argue that an injunction is inappropriate as they are continuing to make a good faith effort to comply with the FLSA and MSPA. ECF No. 115 at 8.

The Ninth Circuit has held that

[i]n deciding whether to grant injunctive relief, a district court must weigh the finding of violations against factors that indicate a reasonable likelihood that the violations will not recur. A dependable, bona fide intent to comply, or good faith coupled with extraordinary efforts to prevent recurrence, are such appropriate factors. An employer's pattern of repetitive violations or a finding of bad faith are factors weighing heavily in favor of granting a prospective injunction.

*Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987). "Current

compliance alone is not a sufficient ground for denying injunctive relief." *Brock v.*

*Shirk*, 833 F.2d 1326, 1332 (9th Cir. 1987), *judgment vacated on other grounds*,

488 U.S. 806 (1988). Further, "[i]n exercising its discretion, the district court must

give substantial weight to the fact that the Secretary seeks to vindicate a public,

and not a private, right." *Marshall v. Chala Enterprises, Inc.*, 645 F.2d 799, 804

(9th Cir. 1981). "[P]rospective injunctions are essential in effectuating the policy

of the FLSA because they place the risk of non-compliance squarely on the

employer." *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1375 (9th Cir. 1981).

As quoted favorably by the Ninth Circuit:

> The injunction subjects the defendants to no penalty, to no hardship. It
> requires the defendants to do what the Act requires anyway to comply
> with the law . . . We do not say or imply that injunctions should be
> issued freely, without regard for the facts, simply because it is the
> Government asking for the injunction. We say that the manifest
> difficulty of the Government's inspecting, investigating, and litigating
> every complaint of a violation weighs heavily in favor of enforcement
> by injunction after the court has found an unquestionable violation of
> the Act.

*Marshall*, 645 F.2d at 804 (quoting *Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th

Cir. 1962)).

The Court finds that an injunction enjoining Defendants to comply with the

recordkeeping and disclosure provisions of the FLSA and MSPA is appropriate.

However enforced, Defendants' policy prohibiting ticket sharing has been

ineffectual. Although Defendants may well have acted in good faith, Defendants have presented no evidence of "extraordinary efforts to prevent recurrence." *See Brock*, 825 F.2d at 1383. Further, Defendants' argument that an injunction would not solve the problem as the workers would not be enjoined from ticket sharing lands wide of the mark. As described above, the Court has found unquestionable violations of the FLSA and MSPA recordkeeping and disclosure provisions. The injunction enjoins the *Defendants* from future violations. It is Defendants' obligation to implement the necessary changes to keep accurate records and make the required disclosures to all workers.[1]

As such, Defendants are enjoined from committing future violations of the FLSA and MSPA recordkeeping and disclosure provisions noted above.[2] Given

---

[1] The Secretary put forth a number of options during oral argument including instituting tighter controls on persons picking in the fields or holding periodic checks throughout the day to ensure that all workers have their own ticket. Further, as noted by the Secretary, Defendants apparently have a workable system for keeping children out of the fields. *See* ECF No. 97-1 at 4. It therefore should not be impossible for Defendants to monitor who is picking in their fields at a given time.

[2] Although defense counsel stated during oral argument that an evidentiary hearing was necessary before the Court could enter an injunction, such a hearing is not

1    that Defendants must revise their current procedures to comply with the Court's

2    Order, the Court will give Defendants a ninety day grace period during which to

3    implement this Order.

4    **III.    Standard for Determining Wages Owed**

5        The Secretary requests that this Court find that the Department of Labor is

6    entitled to prove wages owed as a matter of just and reasonable inference under *Mt.*

7    *Clemens*.  ECF No. 96 at 21. Defendants object that the Secretary has not moved

8    for a declaration to this effect. ECF No. 115 at 10.

9        The Court finds, as a procedural matter, that the Secretary is entitled to

10   prove wages owed through just and reasonable inference. Under *Mt. Clemens*,

11       When the employer has kept proper and accurate records the employee
12       may easily discharge his burden by securing the production of those
         records. But where the employer's records are inaccurate or inadequate
13       and the employee cannot offer convincing substitutes a more difficult
         problem arises. The solution, however, is not to penalize the employee
14       by denying him any recovery on the ground that he is unable to prove
         the precise extent of uncompensated work. Such a result would place a
15       premium on an employer's failure to keep proper records in conformity
         with his statutory duty; it would allow the employer to keep the benefits
16       of an employee's labors without paying due compensation as
         contemplated by the Fair Labor Standards Act. In such a situation we

17   required "when the facts are not in dispute." *Charlton v. Estate of Charlton*, 841

18   F.2d 988, 989 (9th Cir. 1988).  As the Court has determined that no genuine issue

19   of material fact exists concerning the relevant FLSA and MSPA allegations, the

20   Court will enter the injunction without holding a preliminary evidentiary hearing.

hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Mt. Clemens*, 328 U.S. at 687–88. As the Court has found that, due to the existence of "shadow" workers, Defendants' records are inadequate, the Secretary is entitled to prove wages owed as a matter of just and reasonable inference. Any determination concerning the reasonableness of the Secretary's inference is, however, premature given the posture of this case.

Accordingly, **IT IS HEREBY ORDERED**:

(1) The Secretary's Motion for Summary Judgment Regarding the Secretary's Paragraph VIII and XIV(a)-(e) Claims for Relief Under the Fair Labor Standards Act and the Migrant and Seasonal Agricultural Workers Protection Act, **ECF No. 96**, is **GRANTED IN PART** and **DENIED IN PART**. The Court grants summary judgment for the Secretary on the Paragraphs VIII and XIV(a)-(d) claims. The Court denies summary judgment on the Paragraph XIV(e) claim.

(2) The Court enters an injunction against Defendants as outlined above. Defendants are enjoined from future violations of the recordkeeping and

disclosure provisions listed in Paragraphs VIII and XIV(a)-(d), and must take whatever steps are necessary to prevent "shadow" workers from picking on a named worker's ticket or being present in the blueberry fields. Defendants have a ninety day grace period during which to implement this Order.

(3) At a later date, the Secretary will be permitted to prove wages owed as a matter of just and reasonable inference under *Anderson v. Mt. Clemens*.

The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 9th day of November 2015.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Judge

ORDER GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 21